(117 App. Div. 395)

### MILLER et al. v. HARRIS et al.

(Supreme Court, Appellate Division, First Department. February 8, 1907.)

1. MONEY RECEIVED—COMPLAINT—SUFFICIENCY.

A complaint alleged that defendants were the owners of certain land upon which plaintiffs held a mortgage, and that the buildings on the premises were insured, loss, if any, payable to plaintiffs as mortgagees, and that the buildings burned, and plaintiffs allowed the insurance to be paid to defendants on the promise by them that they would replace the buildings, which they failed to do. *Held*, that the allegations of the complaint were sufficient to sustain a cause of action for money had and received.

2. SAME—EVIDENCE—SUFFICIENCY.

In an action for money had and received, evidence *held* sufficient to sustain a judgment against one defendant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Money Received, § 72.]

3. PRINCIPAL AND AGENT—EVIDENCE—SUFFICIENCY.

In an action for money had and received, evidence *held* insufficient to show that one L. acted as the agent of defendant H. in receiving money and making promises in relation thereto.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and Agent, § 41.]

**4. MORTGAGES—MONEY RECEIVED—EVIDENCE—COMPETENCY.**

In an action by mortgagees for money had and received by the mortgagors, it was competent to show that the amount due upon the mortgage had not been paid.

**5. EVIDENCE—COMPETENCY—DECLARATIONS.**

Where it is shown that two parties were acting together in a certain transaction, the declarations of one were competent as evidence against the other.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 994–1002.]

Appeal from Special Term, New York County.

Action by Charles H. Miller and another, trustees of James E. Miller and another under the last will and testament of Jane M. Miller, deceased, against Fanny Harris and another. Judgment for plaintiffs, and defendants appeal. Reversed, and remanded as to defendant Harris. Affirmed as to other defendant.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Ezekiel Fixman and Clarence M. Lewis, for appellants.

Otto C. Wierum, Jr., for respondents.

INGRAHAM, J. The plaintiffs, as trustees, held a mortgage, dated May 23, 1898, upon certain real property owned by the defendants and one Nathan Lewis, since deceased, as tenants in common. The buildings on the mortgaged premises were insured, loss, if any, payable to the plaintiffs as mortgagees. The property was conveyed to the defendants and Nathan Lewis on the 24th day of February, 1899, subject to the mortgage. On the 9th day of May, 1899, the building upon the property was destroyed by fire, and the amount payable under the policies of insurance was adjusted at $2,750. The complaint alleges that this sum of money was paid by the insurance companies "to and received by the defendants and said Nathan Lewis, as tenants in common of said property, to the use of the plaintiffs, who consented to such payment being so made to said parties upon the express promise made to them by the said Nathan Lewis and the defendants that the said moneys would be used in the erection of like buildings upon said premises of a value equal to the value of those destroyed"; that neither the defendants nor the said Lewis did rebuild any building upon the premises in place of those destroyed; that subsequently the plaintiffs foreclosed the mortgage upon the property; that the property was sold and there resulted a deficiency of $4,991.75. The answers put at issue these allegations of the complaint. At the end of the trial counsel for the defendants moved to dismiss the complaint upon the ground that the plaintiffs had failed to prove any cause of action against the defendants, and, further, upon the ground that they had failed to prove that the sum of $2,750 or any sum was paid to or received by the defendant Fanny Harris for the use of the plaintiffs, or for the use of any other person, or that she made any promise in relation to rebuilding the house upon the premises, or that she authorized any person to make any contract on her behalf in relation to rebuilding the premises, and upon other grounds. This motion was denied and the defendants

excepted. The court then left the case to the jury, with instructions that it would be the duty of the jury to determine whether or not by the consent of the plaintiffs this fund went into the hands of Nathan Lewis alone, as claimed by the defendants, or whether they all, either actually or constructively received the same. The court then stated that the evidence of the promise was certain conversations had with Nathan Lewis, a brother of the defendants, who was also a part owner of the property, at which conversations or a part of them the defendant George W. Lewis was present, and that the defendant Harris was sought to be charged as having authorized Nathan Lewis to act for her, so that he was her agent, authorized to make the promise relied upon; and left it to the jury to say whether or not Nathan Lewis was the agent of the defendant Harris. At the close of this charge counsel for the defendants said that he was perfectly satisfied with the charge, and the jury subsequently found a verdict for the plaintiff for the amount claimed, with interest.

I think the allegations of the complaint are sufficient to sustain a cause of action for money had and received. By the policies of insurance the plaintiffs were entitled to receive the amount due from the insurance companies on account of their mortgage. It appeared that checks were drawn by the insurance companies, payable to Nathan Lewis and the defendants and to the plaintiffs as trustees. Thus, to secure the payment of these checks, it was necessary that they should be indorsed by Nathan Lewis and the defendants, and also by the plaintiffs as trustees. These checks were received by Nathan Lewis or the defendant George Lewis, and were presented indorsed by defendants and Nathan Lewis to the attorneys for the plaintiffs who had charge of the matter with a request that the plaintiffs indorse the check and sign the receipt for the money from the insurance company; that the attorney with whom the conversation was had refused to indorse the checks, saying that the trustees expected to get the money from the insurance company and expected to rebuild the buildings upon the mortgaged premises; that the defendant George Lewis said that Mr. Spencer, one of the attorneys for the plaintiffs, had agreed that "we" (evidently referring to Nathan Lewis and himself) had agreed with Mr. Spencer that they were to get the money and to put it into new buildings to be erected upon the premises; that they were to put a great deal more money into the building than was to be received upon the insurance policies; and that Mr. Spencer had agreed to allow them to take the money for that purpose. The matter was then referred to Mr. Spencer. Mr. Spencer testified that he had a number of conversations with Nathan Lewis in relation to the payment of this money by the insurance companies; that Nathan Lewis and the defendant George Lewis had stated to him that they proposed to rebuild the house which had been upon the property and to use the insurance money and to add to it a considerable sum of money, and they asked Mr. Spencer whether the trustees would be willing to allow him to use the insurance money for that purpose; that no agreement was made at that time; that subsequently Nathan Lewis had another interview with Mr. Spencer, who said that the trustees would allow him to use the insurance money for the purpose of erecting a new

building upon the premises. This was before the receipt of the checks from the insurance companies. He further testified that there was a subsequent conversation, when the checks from the insurance companies were presented for indorsement, at which the defendant George Lewis was present, and that the said checks were then indorsed by the attorneys for the plaintiffs. The defendant Harris was called as a witness by the plaintiffs and testified that Nathan Lewis and the defendant George W. Lewis were her brothers; that she had no recollection of signing at any time any papers in relation to this property, and never knew that she was a part owner of it; that her brother Nathan Lewis died in the year 1901; that she never heard about there being a fire; that she did not know her brother had an interest in the property, or that she had an interest in it; that she trusted her brother and left the matter entirely in his hands; that the two checks for the payment of this insurance policy were indorsed by her in blank; that she never knew that this property was mortgaged for $6,000; that at the time she signed the papers her brother Nathan Lewis said, "Fanny, I had a fire up there, and I would like you to sign this paper"; that she did not read the paper, as she trusted her brother. These papers were the proof of loss, and apparently the checks were for the payment of the loss.

· I think there was evidence to sustain this judgment against the defendant George W. Lewis. He had to do with the collection of the amount of loss of the insurance companies, took these checks to the attorney for the plaintiffs, and stated that he and his brother were to have that money to erect new buildings upon the premises, and was present at the time that the final agreement was made between his brother Nathan Lewis and the plaintiffs' attorneys. The money was thus paid to Nathan Lewis and the defendant George Lewis upon the promise that the amount of the insurance money would be invested in new buildings upon the premises which would enhance the value of the property covered by the mortgage, and for that purpose, and that purpose only, the attorneys for plaintiffs consented to the payment to Nathan Lewis. The failure of Nathan Lewis and George W. Lewis to carry out their promise imposed an implied obligation upon them to at least repay the money that they had in their hands which was to be used in the erection of a building upon the premises which would increase the plaintiffs' security. This money, under the policies of insurance, was payable to the plaintiffs. It was their money, placed by them in the hands of Nathan and George Lewis upon a promise that it would be invested in a building upon the premises. The failure of Nathan and George Lewis to keep that promise left them with so much money belonging to the plaintiffs in their hands which the plaintiffs were entitled to recover as money had and received. The case as to the defendant Harris, however, is quite different. She had no interview with the plaintiffs or their attorneys, made no promise to them, and received none of the money. She testified that she knew . nothing about the transaction, except that she was requested by her brothers to sign some papers, which she did; but the signing of these papers was only the preliminary steps necessary to place the money representing the value of the buildings destroyed by fire in the hands

of the plaintiffs. It was after she had signed these papers and indorsed the checks that they were presented to the plaintiffs' attorneys for their signature and indorsed by them upon the agreement specified. There was no promise made on behalf of the defendant Harris, or no money received by her, unless Nathan Lewis was her agent to receive the money and was authorized by her to make a promise in relation to it. It is true that it appears that she was the owner of an undivided interest in the property, but she had never signed the bonds and mortgage, and was not liable for the amount secured to be paid. Her evidence, which is the only evidence in relation to her connection with the transaction, was that she did not know that she had an interest in the property and had nothing to do with the transaction; and, while she says she trusted her brother and left everything to him, in the absence of evidence to show that she had anything to do with the property or the insurance money or its receipt, or the agreement under which it was received, she was not liable for the money that was received and used by Nathan Lewis without her knowledge or consent.

The appellants raise several questions relating to the rulings on evidence, but we think no error was committed. The evidence of the sale under the judgment of foreclosure, while possibly not necessarily a part of the plaintiffs' cause of action, was competent to show that the amount due upon the mortgage had not been paid, for, if the plaintiffs had realized the amount of their mortgage by a sale of the property, they could not maintain this action for money had and received. While the evidence of declarations of Nathan or George Lewis was not competent as against the defendant Harris, the declarations of Nathan Lewis were competent as against George Lewis, as the evidence is sufficient to show that they were acting together in obtaining this insurance. The other objections to testimony do not require discussion.

I think, therefore, that the complaint should have been dismissed as against the defendant Harris, and that as to her the judgment should be reversed, and a new trial ordered, with costs to the said appellant to abide the event, and that the judgment as to the defendant George W. Lewis should be affirmed, with costs. All concur.